**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**AKZO NOBEL COATINGS, INC.,**

    **Plaintiff,**

v.                                            Case No.  8:09-cv-2453-T-30TBM

**AUTO PAINT & SUPPLY OF**
**LAKELAND, INC.,**

    **Defendant.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant's Motion for Partial Summary Judgment (Dkt. #56) and Plaintiff's Response (Dkt. #62), Plaintiff's Motion for Partial Summary Judgment (Dkt. #66), Defendant's Response (Dkt. #67), and Plaintiff's Reply (Dkt. #73). The Court, having considered the motions and responses, and being otherwise advised, concludes that Defendant's Motion should be denied in part and granted in part, and that Plaintiff's Motion should be denied.

### Background

Plaintiff Akzo Nobel Coatings, Inc. ("Akzo") is a manufacturer of car refinish products, which it distributes to wholesalers, automotive body shops, car dealerships, and other customers. Defendant Auto Paint & Supply of Lakeland, Inc. ("APS") was a former

authorized Akzo wholesaler. This action relates to the most recent wholesaler agreement between the two parties, entered into on May 26, 2009.[1]

Under this agreement APS was authorized to serve as Akzo's authorized wholesaler in five counties throughout central Florida. The wholesaler contract required APS to deal exclusively in Akzo products within the assigned area, to use its best efforts to promote the sale of Akzo products, to refrain from marketing competitive products, and to not convert or attempt to convert Akzo customers to competing products.

In July of 2009 APS began secretly negotiating with Dupont to distribute products that were directly competitive to Akzo merchandise. On October 2, 2009, APS entered into a single line distributor letter agreement with Dupont. Pursuant to this agreement APS agreed to purchase automotive paint materials exclusively from Dupont for five years in exchange for two million dollars and customer incentives. APS also agreed to convert ninety percent of its existing customers to Dupont products. It is undisputed that APS has since converted Akzo customers to Dupont's line of products.

Akzo later sued APS[2] alleging: (1) breach of contract; (2) tortious interference with a contract; (3) tortious interference with a business relationship; and (4) a violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

---

[1] The agreement specified a term of one year, although either party could terminate the contract at will upon ninety days written notice.

[2] Akzo also sued James Collier; however, he has since been terminated as a party defendant. (*See* Dkt. 64).

APS has counterclaimed for: (1) fraudulent inducement; (2) breach of contract; and (3) tortious interference with a contract and an advantageous business relationship.[3]

APS now moves for summary judgment on: (1) Akzo's tortious interference with a contract claim; (2) Akzo's tortious interference with a business relationship claim; (3) Akzo's claim for certain damages; and (4) Akzo's claim for attorney's fees.

Akzo moves for summary judgment on its breach of contract claim against APS.

## Summary Judgment Standard

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

---

[3] APS's allegations against Akzo are for the most part not relevant to the issues raised in the two motions for summary judgment now before this Court.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson,* 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.,* 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248; *Hoffman v. Allied Corp.,* 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

**Discussion**

**A.     APS's Motion for Summary Judgment with Respect to Akzo's Tortious Interference with a Contract Claim**

In order to state a cause of action for tortious interference with a contract, a plaintiff must prove: "(1) the existence of a contract; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the breach of the contract; (4) the absence of

any justification or privilege; and (5) damages resulting from the breach." *Washington v. Sch. Bd. of Hillsborough Cnty.,* 731 F.Supp.2d 1309, 1320 (M.D. Fla. 2010).

Akzo argues that APS knew that Akzo had entered into supply contracts with certain customers serviced by APS as an authorized wholesaler and that APS intentionally induced those customers to switch to Dupont's line of products, thereby inducing them to breach their contracts with Akzo.[4] Akzo also argues that this conduct was neither justified nor privileged and that Akzo was damaged as a result of losing customers. Thus, Akzo contends that it sufficiently states a claim for tortious interference with a contract.

APS moves for summary judgment on Akzo's tortious interference with a contract claim. First, APS argues that as a matter of law there is no cause of action for tortious interference if the relevant contract is terminable at will.[5] Second, it argues that to the extent it did interfere with any of Akzo's contracts, it had a "competitive privilege" to do so.

Despite APS's contention, under Florida law the mere fact that a contract is terminable at will is insufficient to defeat a cause of action for tortious interference with a contract. *See, e.g., Knight v. Palm City Millwork and Supply,* 78 F.Supp. 2d 1345, 1347 (S.D. Fla. 1999) ("Florida courts have held that the mere fact that a contract is terminable at will is not a defense to an action for tortious interference.")

---

[4]Akzo contends that, among other things, over the weekend of November 13, 2009, approximately ten to twelve Dupont employees secretly arrived in Lakeland to begin working with APS to convert Akzo customers en masse to Dupont products.

[5]Here, it is undisputed that Akzo's contracts with its end-users were terminable at will.

While tortious interference with a contract at will is actionable in Florida, in such a situation there will often be a competitive privilege to interfere. *Unistar Corp. V. Child,* 415 So.2d 733, 735 (Fla. 3rd DCA 1982). Imagine, for example, a contract between two parties, A and B. If the contract is terminable at will, a third party, C, will ordinarily have a competitive privilege to induce either A or B to do business with C instead. For example, C may offer B more attractive terms of doing business in an attempt to lure B away from its relationship with A.

Although a competitor has a privilege to solicit customers subject to at will contracts, the privilege is not absolute. On the contrary, there is an obligation to use proper means in one's attempt to convert customers. *McCurdy v. Collis,* 508 So.2d 380, 384 (Fla. 1st DCA 1987) ("In those circumstances in which there is a qualified privilege to interfere with a business relationship, the privilege carries with it the obligation to employ means that are not improper.")

Improper means include, *inter alia,* C's attempt to convert the customers of A provided that C has a contractual duty not to do so. *See Hilb, Rogal and Hamilton Co. Of Richmond v. DePew,* 247 Va. 240, 246 (1994) (a former employee who solicits customers in violation of a noncompetition clause employs improper means.)

Here, Akzo alleges, among other things, that APS secretly conspired with Dupont to poach Akzo's customers, in direct violation of APS's contractual duties. As a result, APS

may have employed improper means in converting Akzo's customers. Accordingly, Akzo is not entitled to summary judgment on this issue.[6]

**B.     APS's Motion for Summary Judgment with Respect to Akzo's FDUTPA Claim**

It is unlawful under the FDUTPA to engage in any "unfair or deceptive acts or practices committed in the conduct of any trade or commerce." *N. Am. Clearing, Inc. v. Brokerage Computer Sys., Inc.,* 666 F.Supp.2d 1299, 1310 (M.D. Fla. 2009). To sustain a FDUTPA cause of action, a plaintiff must prove that a deceptive or unfair practice caused it damages. *Id.* Significantly, the "FDUTPA applies even if the unfair or deceptive act involves only a single party, a single transaction, or a single contract." *Id.*

Here, Akzo contends that it has a FDUTPA claim resulting from the allegedly unfair and deceptive practices employed by APS to secretly convert Akzo's customers to competitive Dupont products.

APS moves for summary judgment on Akzo's FDUPTA claim, arguing that Akzo lacks standing to sue under the FDUPTA as: (1) Akzo is not a consumer; and (2) Akzo is not a Florida resident.[7]

---

[6]Both parties agree that the analysis for Akzo's tortious interference with a business relationship claim is the same as that for its tortious interference with a contract claim since the relevant contracts are terminable at will. Thus, the analysis is the same, and summary judgment is not appropriate on this claim either.

[7]APS also argues that because Akzo allegedly cannot prove a cause of action for tortious interference, it cannot establish a claim under the FDUPTA. This Court has already decided that APS is incorrect to state that Akzo cannot establish a tortious interference claim as a matter of law. Hence, this argument is moot for the purposes of summary judgment.

APS argues that only consumers have standing to sue under the FDUPTA. As Akzo has not alleged that it was a consumer, APS argues that it therefore lacks standing to sue.

Florida courts have split over whether an individual non-consumer has standing under the FDUPTA. *Intercoastal Realty, Inc. V. Tracy,* 706 F.Supp.2d 1325, 1335 (S.D. Fla. 2010). However, whether or not an individual non-consumer plaintiff has standing, a legitimate business enterprise non-consumer *does. Id.* As it is undisputed that Akzo is a legitimate business enterprise, this Court concludes that Akzo has standing.

APS also argues that only Florida residents have standing to sue under the FDUPTA. As Akzo is not a Florida resident, APS argues that it lacks standing. Despite APS's contention, however, the FDUPTA can be applicable to out of state residents. *See Millennium Commc'ns & Fulfillment, Inc. v. Office of the Attorney Gen.,* 761 So.2d 1256, 1261-62 (Fla. 3rd DCA 2000) ("Conspicuously absent...is any language which purports to confine the provisions of FDUTPA or limit...[it]...to commercial transactions involving only Florida residents...[a]s we read FDUPTA, it seeks to prohibit unfair, deceptive and/or unconscionable practices which have transpired within the territorial boundaries of this state without limitation.")

The one case cited by APS in support of its contention that non-Florida residents lack standing, *Montgomery v. New Piper Aircraft,* 209 F.R.D. 221 (S.D. Fla. 2002), is not to the contrary. In that case, a large class action, the Court refused to apply the FDUTPA to "the nationwide claims of all putative class members, irrespective of where they lived and suffered alleged diminution in value injury." *Id.* at 227. Noting that there was "no evidence

in the record of any putative class members having suffered any alleged injury in Florida," the Court found that the prospective class members contacts with Florida were too attenuated to apply Florida law. *Id.*

Here, by contrast, the alleged deceptive, and/or unfair acts are alleged to have taken place in Florida. As a result the action does not have attenuated connections to the state. On the contrary, Florida is the state with the primary interest in the action. Accordingly, the FDUTPA is applicable even if Akzo is a non-resident, and Akzo has standing to state a claim under the statute.

**C.     APS's Motion for Summary Judgment with Respect to Potential Damages Available to Akzo**

   **i.     APS Contends that Akzo is Not Entitled to Both Lost Profits and Repudiation Damages**

APS contends that, in the event that Akzo prevails on its breach of contract claim, Akzo cannot recover both lost profits and reliance damages (specifically, Akzo's actual expenditures on the contract). In its response, Akzo concedes this point. Accordingly, if Akzo chooses to pursue its lost profits upon prevailing on its breach of contract cause of action, it should be barred from also recovering its actual expenses incurred in reliance upon performance of the contract.

   **ii.     APS Contends that any Recovery of Lost Profits should be Limited**

APS contends that since the wholesaler agreement was terminable at will, any recovery of lost profits should be limited to ninety days, the length of the required notice of termination period under the wholesaler agreement.

Courts have found that in a contract terminable at will, the parties have only an expectancy in a future business relationship, as either party may choose to terminate the contract at any time. Accordingly, if one party terminates an at-will contract, that party is not entitled to lost profits for the entirety of the length of the contract. On the contrary, a party may only recover lost profits flowing from the failure to give reasonable notice, such lost profits being limited to the duration of the reasonable notice period. *Pharo Distrib. Co. v. Stahl,* 782 S.W.2d 635, 639 (Ky. Ct. App. 1990) ("Since it is the failure to give reasonable notice of termination rather than the termination of the contract itself which constituted the breach, the damages must, of necessity, be attuned to this failure. The damages may not reflect loss of a contract or discontinuance of the business relationship...The loss [] suffered must be limited to those elements directly relating to lack of notice and the lost opportunity to 'put his house in order.'"); *Maytronics, Ltd., v. Aqua Vac Sys., Inc.,* 277 F.3d 1317, 1321 (11th Cir. 2002).

Here, it is undisputed that the contract was terminable at will and that the parties were required to give ninety days written notice of termination. Thus, to the extent that Akzo seeks lost profits due to the wrongful termination of the contract, it may only claim such profits for a period of ninety days, the duration of the contractual notice of termination period.[8]

---

[8] In its response, Akzo fails to cite a single case in support of its contention that a party may recover lost profits beyond the reasonable notice period upon the termination of a contract at will. It is worth noting, however, that nothing said herein prevents Akzo from recovering damages due to APS's alleged wrongful conversion of customers in direct violation of the contract.

### iii.     APS's Motion for Summary Judgment with Respect to Attorney's Fees

APS also moves for summary judgment on the issue of attorney's fees. Specifically, APS contends that Akzo has no right to claimed attorney's fees, as a matter of law, with respect to Akzo's claims of: (1) breach of contract; (2) unjust enrichment; (3) tortious interference with a contract; and (4) tortious interference with a business relationship.

Under the "American Rule," in the absence of a statute, Court rule, or contract provision, a party generally has no right to collect attorney's fees from the opposing party. *See, e.g., Stinson v. Feminist Women's Health Ctr., Inc.,* 416 So.2d 1183, 1185 (Fla. 1st DCA, 1982).

Here, the only contract reference to the recovery of attorney's fees entitles Akzo to recover attorney's fees in connection with an injunctive suit brought against APS to enjoin it from using Akzo's trademarks, service marks, or trade names upon the expiration, and/or termination of the contractual relationship.

This contractual provision is not relevant here, and no other contractual provision provides for attorneys' fees to be awarded to either party. Moreover, APS points out that there is no statutory basis for the recovery of attorney's fees with respect to the above-mentioned causes of action. In addition, Akzo does not dispute that attorney's fees are not available. Accordingly, APS is entitled to summary judgment on this issue.[9]

---

[9] Of course, the Court retains its inherent authority to award attorney's fees in various situations.

### D. Akzo's Motion for Partial Summary Judgment

Akzo moves for summary judgment on its breach of contract claim. Under Florida law, in order to state a claim for breach of contract, a plaintiff must prove: (1) the existence of a valid contract; (2) a material breach; and (3) damages. *APR Energy, LLC v. Pakistan Power Res., LLC,* 653 F.Supp. 2d 1227, 1232 (M.D. Fla. 2009). In addition, a plaintiff must prove that the plaintiff either performed its obligations under the contract or that it had a legal excuse for their nonperformance. *Id. See also Textron Fin. Corp. V. Lentine Marine Inc.,* 630 F.Supp.2d 1352, 1356 (S.D. Fla. 2009); *Babe, Inc., v. Baby's Formula Serv., Inc.,* 165 So.2d 795, 798 (Fla. 3rd DCA 1964).

Here, APS has filed a counterclaim alleging that Akzo also breached the wholesaler agreement by, among other things: (1) failing to provide APS with sufficient products for resale; (2) failing to give APS agreed upon product discounts; and (3) wrongfully withholding APS product orders. Thus, there is a dispute of fact as to whether Akzo has performed its obligations under the contract. Moreover, Akzo has failed to make any argument that it has sufficiently performed its obligations under the contract so as to allow it to maintain a breach of contract cause of action. Accordingly, Akzo is not entitled to summary judgment on its breach of contract claim.

It is therefore **ORDERED AND ADJUDGED** that:

1. Defendant APS's Motion for Summary Judgment with respect to Akzo's tortious interference with a contract claim is hereby denied.

2. Defendant APS's Motion for Summary Judgment with respect to Akzo's tortious interference with a business relationship claim is hereby denied.

3. Defendant APS's Motion for Summary Judgment with respect to Akzo's FDUTPA Claim is hereby denied.

4. To the extent that Akzo seeks to recover lost profits on its breach of contract claim, it cannot also recover reliance damages.

5. To the extent that Akzo seeks lost profits due to APS's alleged wrongful termination of the contract, it is limited to recovering profits for a duration of ninety days, the length of the contractual notice of termination provision.

6. Akzo is not entitled to attorney's fees on its breach of contract, unjust enrichment, tortious interference with a contract, and/or tortious interference with a business relationship claim.

7. Akzo's Motion for Partial Summary Judgment (Dkt. #66) is hereby denied.

**DONE** and **ORDERED** in Tampa, Florida on November 17, 2011.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2009\09-cv-2453.frm